UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


DARRELL CORDER,

               Plaintiff,                    CIVIL ACTION NO. 05 CV 72127 DT

      v.                                DISTRICT JUDGE GERALD E. ROSEN

JO ANNE B. BARNHART,          MAGISTRATE JUDGE VIRGINIA M. MORGAN
COMMISSIONER OF
SOCIAL SECURITY,

               Defendant.
_____/

**REPORT AND RECOMMENDATION**

**I.  Introduction**

This Social Security case comes before the court on the parties' cross-motions for

summary judgment.  For the reasons stated below, the court recommends that the

Commissioner's motion be granted and that plaintiff's motion be denied.

**II.  Background**

On February 13, 2003, plaintiff filed an application for Social Security Disability

Insurance Benefits (DIB), alleging that he was disabled due to a right wrist impairment and Post-

Traumatic Stress Disorder (PTSD), with a disability onset date of January 1, 1999.  (Tr. 12, 47-

49, 85)  Plaintiff was 53 years of age when he filed the application.  He has a high school

- 1 -

education, with a work history including employment as an assembler, a painter, and a record keeper for General Motors.  (Tr. 58, 70-77, 86, 97-98)

The Social Security Administration (SSA) denied plaintiff's claim on May 15, 2003.  (Tr. 35-39)  Plaintiff then requested a hearing before an administrative law judge (ALJ).  (Tr. 40)  The hearing was held on December 2, 2004 before ALJ Dean Metry.  (Tr. 317-54)

On December 22, 2004, the ALJ issued a written decision denying plaintiff's claim.  (Tr. 9-19)  The ALJ determined that plaintiff had the following impairments: PTSD, a remote history of left carpal tunnel syndrome with release surgery, status-post right wrist cartilage tear and arthroscopic surgery, obesity, possible degenerative joint disease of the right knee, and degenerative changes of the right shoulder.  Further, the ALJ determined that plaintiff's impairments were "severe" withing the meaning of 20 C.F.R. § 404.1520(a)(4)(ii), but that he did not have an impairment that met or equaled any of the impairments listed in Appendix 1, Subpart P of the Social Security regulations.  Taking into account plaintiff's residual functional capacity (RFC), as determined by the ALJ, as well as the hearing testimony of a vocational expert (VE), the ALJ concluded that plaintiff retained the ability to perform his past job as a record keeper.  Accordingly, the ALJ found that plaintiff was not "under a disability" within the meaning of the Social Security Act.

On February 11, 2005, plaintiff  filed a request for review of the ALJ's decision with the SSA's Appeals Council.  (Tr. 8)  The Council denied the request on April 4, 2005.  (Tr. 5-6A)  The ALJ's decision thus became the final determination of the Commissioner.

On May 31, 2005, plaintiff filed suit for review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).  As noted above, the matter comes before the court on the parties' cross-motions for summary judgment.  Plaintiff contends in his motion that the ALJ erred in failing to give controlling weight to the opinion of Dr. Viken Matossian, plaintiff's treating psychiatrist.  Plaintiff also argues that the ALJ erred in concluding that his past job as a record keeper constituted "past relevant work."  The Commissioner contends in her motion that the ALJ made no legal errors and that his decision is supported by substantial evidence.  Accordingly, the Commissioner urges the court to affirm the ALJ's decision

### III.  Legal Standards

### A.  Disability Evaluation

A person is "disabled" within the meaning of the Social Security Act "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. § 423(d)(1)(A).  Further,

> an individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

- 3 -

The claimant bears of the burden of proving that he is disabled.  Foster v. Halter, 279 F.3d 348,

353 (6th Cir. 2001).

A five-step process is used to evaluate DIB claims.  20 C.F.R. § 404.1520.  In Foster, 279

F.3d at 354 (citations omitted), the Sixth Circuit discussed the process:

> The claimant must first show that she is not engaged in substantial
> gainful activity.  Next the claimant must demonstrate that she has a
> "severe impairment."  A finding of "disabled" will be made at the
> third step if the claimant can then demonstrate that her impairment
> meets the durational requirement and "meets or equals a listed
> impairment."  If the impairment does not meet or equal a listed
> impairment, the fourth step requires the claimant to prove that she
> is incapable of performing work that she has done in the past.
> Finally, if the claimant's impairment is so severe as to preclude the
> performance of past work, then other factors, including age,
> education, past work experience, and residual functional capacity
> must be considered to determine if other work can be performed.
> The burden shifts to the Commissioner at this fifth step to establish
> the claimant's ability to do other work.

**B.  Standard of Review**

Plaintiff seeks review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g),

which provides, in part:

> Any individual, after any final decision of the Commissioner of
> Social Security made after a hearing to which he was a party,
> irrespective of the amount in controversy, may obtain a review of
> such decision by a civil action commenced within sixty days after
> the mailing to him of notice of such decision or within such further
> time as the Commissioner of Social Security may allow.

Judicial review under § 405(g) is limited to a determination of whether the ALJ's findings

are supported by substantial evidence and whether the ALJ applied the proper legal standards.

Brainard v. Secretary of HHS, 889 F.2d 679, 681 (6th Cir. 1989); Key v. Callahan, 109 F.3d 270,

- 4 -

273 (6th Cir. 1997).  The Sixth Circuit stated in Brainard, 889 F.3d at 681, that "[s]ubstantial evidence is more than a mere scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Further, "the decision of an ALJ is not subject to reversal, even if there is substantial evidence in the record that would have supported an opposite conclusion, so long as substantial evidence supports the conclusion reached by the ALJ." Key, 109 F.3d at 273.

### IV.  Analysis

#### A.  Opinion of Treating Physician

Plaintiff's psychiatrist, Dr. Viken Matossian, filled out a Mental Residual Functional Capacity (MRFC) form in which he indicated that plaintiff was markedly limited in the following functional areas: (1) the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, (2) the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (3) the ability to interact appropriately with the general public, (4) the ability to accept instructions and respond appropriately to criticism from supervisors, and (5) the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (Tr.  261-62) Dr. Matossian further indicated that plaintiff was either moderately limited or not significantly limited in the other areas listed in the form.  Id.  At the hearing, the VE testified, in response to a question posed by plaintiff's counsel, that a claimant with "marked" mental limitations in the areas set forth above  would not be capable of performing work on a sustained basis.  (Tr. 351)

- 5 -

In his opinion, the ALJ discussed Dr. Matossian's findings and incorporated some of those findings into his assessment of plaintiff's residual functional capacity (RFC). However, the ALJ determined that Dr. Matossian's finding that plaintiff was markedly limited in the areas identified above was entitled to little weight.[1] The ALJ stated the following regarding Dr. Matossian's findings:

> Generally a treating source medical opinion will be given controlling weight, although the finding of disability is reserved to the Commissioner (SSR 96-2p and 96-5p). In this case, Dr. Matossian opined that the claimant had moderately limited ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or proximity to others without being distracted by them, and respond appropriately to changes in the work setting. The undersigned agrees with these limitations and they are taken into account in the mental residual functional capacity assessed below.
>
> It was further opined by Dr. Matossian that the claimant had markedly limited ability to perform activities within a schedule,

---

[1]The ALJ determined that plaintiff had the following RFC: Employing a function by function analysis as required by SSR 96-8p, the undersigned finds that physically, the claimant can lift at least 20 pounds occasionally; lift 10 pounds frequently; sit, stand or walk for a total of eight hours in a work day; push or pull frequently; perform postural activities frequently; perform frequent fingering and handling of objects; see, hear, and speak without limitation; and perform work in any environment except those requiring him to climb ropes, ladders, scaffolding and the like. Mentally, the claimant can understand, remember and carry out simple instructions; make judgments on simple work-related decisions; interact appropriately with the public, supervisors and co-workers if contact is incidental; and respond appropriately to work pressures and change in a usual work setting as long as the work is task-oriented rather than production or quota driven. This places the claimant's residual functional capacity within the range of unskilled light work. (Tr. 16-17)

maintain regular attendance, and be punctual within customary
tolerances; complete a normal workday and workweek without
interruptions from psychologically based symptoms and to perform
at a consistent pace without an unreasonable number and length of
rest periods; interact appropriately with the general public; accept
instructions and respond appropriately to criticism from
supervisors; and get along with coworkers or peers without
distracting them or exhibiting behavioral extremes. The record
does not reflect any difficulties in performing within a schedule,
attendance or punctuality. There is no indication that the claimant
needs rest periods frequently, or at all. As described above, the
evidence is conflicting as to the claimant's ability to interact with
others. This portion of Dr. Matossian's opinion is accorded very
limited weight as it is not consistent with th evidence, or the
claimant's own reports. Treatment notes consistently, although not
constantly, indicate improvement in his sleeping, irritability,
anxiety, energy, attention span, edginess, impulsivity and
motivation. In fact, in February, 2001, it was noted that he was
able to concentrate well all day long.

(Tr. 16)

Relying on the "treating physician rule," plaintiff claims that the ALJ erred in failing to

give controlling weight to Dr. Matossian's opinion in its entirety. Plaintiff does not contend that

the ALJ failed to include in his RFC determination restrictions sufficient to account for the

portions of Dr. Matossian's opinion the ALJ adopted. Accordingly, the court will focus its

discussion on that portion of Dr. Matossian's opinion that the ALJ declined to accept.

"In general, the opinions of treating physicians are accorded greater weight than those of

physicians who examine claimants only once." Walters v. Commissioner of Social Sec., 127

F.3d 525, 529-30 (6th Cir. 1997). Indeed, 20 C.F.R. § 404.1527(d)(2) provides that a treating

source's opinion regarding the nature and severity of a claimant's condition is entitled to

controlling weight if the opinion is "well-supported by medically acceptable clinical and

- 7 -

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. However, as is suggested by the regulation, the ALJ is not bound by a treating physician's opinion if that opinion is not supported by sufficient clinical findings or is otherwise inconsistent with other substantial evidence in the record. See Walters, 127 F.3d at 530.

The record reflects that Dr. Matossian saw plaintiff on a regular basis for a span of over three years. Thus, there is no question that Dr. Matossian is a "treating source" within the meaning of 20 C.F.R. § 404.1527. The Commissioner does not contend otherwise. However, the court finds that to the extent the ALJ discredited Dr. Matossian's opinion, he did not err in so doing.

As indicated above, Dr. Matossian found that as a result of plaintiff's mental impairment, he had "marked" limitations – the most severe rating on the scale – in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and the ability to complete a normal work day and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Contrary to plaintiff's bald assertions, there is nothing in Dr. Matossian's treatment notes that supports these findings, and there is otherwise nothing in the record indicating that plaintiff's mental impairment results in such extreme limitations in this area. As for the treatment notes, they consist almost exclusively of plaintiff's statements regarding the current events in his life and his assessment of his own mental condition. Dr. Matossian offers no observations, impressions, or diagnoses regarding the nature or severity of plaintiff's condition. Given the lack of support in Dr. Matossian's own treatment

- 8 -

notes and the record as a whole, the ALJ was well within his discretion in rejecting Dr.

Matossian's findings that plaintiff was markedly limited in the two areas identified above.

Further, Dr. Matossian found that plaintiff was markedly limited in his ability to interact appropriately with the general public, the ability to accept instructions and respond appropriately to criticism from supervisors, and the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. As with the above findings, there is nothing in Dr. Matossian's treatment notes supportive of such extreme findings in these areas, and the record does not otherwise indicate that plaintiff's ability to interact appropriately with others is so limited as a result of his mental impairment. Dr. Matossian's treatment notes consistently refer to plaintiff as "angry and irritable," but they also indicate that plaintiff's anger manifested itself mainly when he was driving. For instance, Dr. Matossian noted on July 28, 2002, that plaintiff "[s]ays he is doing just fine. He thinks he is about the same with his anger.... *Still anger is mostly when driving*." (Tr. 209)(emphasis added). The treatment notes also indicate that plaintiff had occasional conflict with his wife and other members of his family, but other than plaintiff's propensity for "road rage," there is nothing in Dr. Matossian's notes demonstrating a marked inability to interact appropriately with others, either generally or in a workplace setting. Further, plaintiff's wife of over 30 years indicated in a Daily Activities Report dated March 17, 2003, that plaintiff liked to go to car shows, flea markets, and UAW reunion picnics, that he liked spending time with his grandchildren, brothers, and sisters, that he "gets along fine with everyone," that "he gets along fine in groups," and that he had no difficulties when he went out in public. (Tr. 112-13, 115) These statements from plaintiff's wife, who would presumably know

plaintiff better than his psychiatrist, undercut Dr. Matossian's findings regarding plaintiff's

ability to interact appropriately with others.   The court also notes that a State of Michigan

Disability Determination Service consultant concluded that plaintiff's mental impairment did not

even qualify as a "severe" impairment under 20 C.F.R. § 404.1520(a)(4)(ii), which is not a

significant hurdle to overcome in a Social Security case.   See Higgs v. Bowen, 880 F.2d 860, 862

(6th Cir. 1988)(step two severity requirement is a "de minimis hurdle in the disability

determination process").   This finding also detracts from Dr. Matossian's opinion regarding the

severity of plaintiff's mental impairment.   Based on the foregoing, the court finds that the ALJ

had a substantial basis in the record to decline to give controlling weight, or, for that matter, any

weight, to Dr. Matossian's opinion that plaintiff's mental impairment resulted in "marked"

limitations in the areas discussed above.

### B.  Past Relevant Work

Plaintiff testified at the hearing that he was placed in a record keeper position at General

Motors after he became physically unable to do his past assembly line work.  (Tr. 325, 335)

Plaintiff held the position for anywhere from two and one-half to three years.  (Tr. 336)   The job

entailed checking on two machines every hour, printing out "a parameter of what the machines

were running," graphing the data, and notifying the appropriate personnel if one of the machines

malfunctioned.  (Tr. 336-37, 344-46)  Plaintiff performed this operation once every hour, and it

took him 15 to 20 minutes to do so, longer if he detected a malfunction.  (Tr. 336, 347-48)

Plaintiff argues that this record keeper job was not "past relevant work" within the meaning of 20

C.F.R. §§ 404.1520, 404.1560(b)(1) and that the ALJ erred in finding to the contrary.

- 10 -

The term "past relevant work" is defined in 20 C.F.R. § 404.1560(b)(1) as "work that you have done within the past 15 years, that was substantial gainful activity, and that lasted long enough for you to learn to do it." The term "substantial gainful activity" is defined as follows in 20 C.F.R. § 404.1510: "Substantial gainful activity means work that–(a) Involves doing significant and productive physical or mental duties; and (b) Is done (or intended) for pay or profit." "Substantial gainful activity" is further defined in 20 C.F.R. § 404.1572:

> Substantial gainful activity is work activity that is both substantial and gainful:
>
> (a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility that when you worked before.
>
> (b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

The record establishes that plaintiff held the record keeper position within the last 15 years, and plaintiff does not contest that the position lasted long enough for him to have learned it. Rather, plaintiff appears to argue that the job does not meet the definition of "substantial gainful activity." He contends in this regard that the record keeper job was "makework" that was created specifically to accommodate his physical impairments and that such work cannot constitute substantial gainful activity. Further, plaintiff raises two arguments based upon language of Social Security Ruling 86-8, which characterizes past relevant work as "either the specific job a claimant performed or the same type of work as it is customarily performed

- 11 -

throughout the economy."  SSR 86-8 at *7.  Plaintiff contends that he cannot return to the

specific position he held with GM because he was forced to take a medical retirement and,

quoting from his brief, that "there is no evidence this job was customarily performed some other

way throughout the economy."  For the reasons stated below, the court finds these arguments to

be wholly lacking in merit.

Though plaintiff cited none in his brief, there is some authority to the effect that a "make

work" position created solely to accommodate an employee's medical condition does not

constitute "past relevant work" within the meaning of the regulations.  In Kolman v. Sullivan,

925 F.2d 212 (7th Cir. 1991), the claimant, who was found to have a severe mental impairment,

was denied DIB benefits on the ground that he could perform his past work as a "non-intervening

security guard," a job that had been created under the Comprehensive Employment and Training

Act of 1973, P.L. 93-203, 87 Stat. 839, a federal job-training program.  The Seventh Circuit

characterized the claimant's job as a "make work training" position, temporary in nature, that

was "designed to equip the employee for real work–not a career that a person disabled from

pursuing a real career can be expected to pursue."  Id. at 213.  Based on that characterization, the

court concluded that the ALJ erred in rendering a step four finding that the claimant was not

disabled, stating that "[a] nonexistent make work training job is not past relevant work within the

meaning of the regulations as we interpret them."  Id. at 214.  The Circuit Court thus reversed the

ALJ's decision and remanded the matter to the Secretary for further proceedings.

A similar result was reached in the case of Roberts v. Apfel, 27 F.Supp.2d 1295

(N.D.Ala. 1998).  There, the claimant was employed with a municipal public works department

- 12 -

for many years, rising from the position of laborer to an assistant supervisor position, which

entailed some manual labor and heavy lifting.  Due to certain physical impairments, the claimant

became unable to tolerate the demands of the position.  The city then created an office-bound

supervisor position for the claimant.  As the district court stated, "[t]he [c]ity...in an admirable

show of gratitude for [the claimant's] long service...allowed him to continue receiving his

paycheck and to maintain his job duties, despite the fact that he couldn't really perform his

assigned job duties anymore."  Id. at 1296.  The ALJ denied the claimant's request for DIB

benefits on the ground that he was capable of performing his past relevant work as an in-office

assistant supervisor for the city.  The district court reversed and remanded the matter for further

proceedings, concluding that while the evidence supported the ALJ's determination that the

claimant could perform his past work as an in-office supervisor, the position did not constitute

substantial gainful activity, and thus was not "past relevant work" within the meaning of the

regulations:

> "Past relevant work in the regulatory scheme is a gauge by which
> to measure the physical and mental capabilities of an individual
> and the activities that he or she is able to perform, rather than a
> means by which to assure that the claimant can actually find
> employment."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).
> For this reason, the actual availability of the job is not important.
> The focus is on the physical and mental ability to do a job, *any* job.
>
> What happens, however, if the job the plaintiff held previously was
> not a real job at all?  This could happen because the job was in
> effect a subsidy, *see, e.g.*, *Kolman*, 925 F.2d at 213 (job was a
> make-work training kob created under a federal aid program), or
> for any number of other reasons.  Regardless of the reason, some
> people are paid for jobs that require little or no effort, and which no
> rational employer, operating in a competitive circumstance, would

- 13 -

> ever create.  The fact that a claimant could hold down such a job,
> perhaps created precisely so an extremely impaired individual
> could full it, would reveal nothing about the claimant's "physical
> and mental capabilities" to do actual work.  Thus, even under the
> Commissioner's understanding of previous work, with its focus on
> capability rather than actual job availability, past work of this type
> would not suggest that the claimant was not disabled.  It therefore
> should not be considered as previous work within the meaning of §
> 423(d)(2)(A).

Id., 27 F.Supp.2d at 1299.

While these cases have some logical appeal, the court finds that the principles discussed

therein are inapplicable to the present matter.  Plaintiff asserts in his brief that the record keeper

position was a mere "make-work" position, but he cites nothing in the record to support that

contention.  The position certainly bears no resemblance to the job discussed in Kolman.  There

is no indication in the record that it was a training position.  Further, plaintiff testified that he

held the job for between two and one-half and three years, and he further testified that the job

was eventually given to someone with more seniority.  (Tr. 349)  Thus, the record indicates that

the job was not a mere temporary job like the job in Kolman.  In addition, there is nothing in the

record indicating that the job was created in order to permit plantiff to keep working, or, stated

differently, that it was not a "real job," as in Andrews.  Again, plaintiff testified that the job was

given to someone with more seniority, indicating that the job was permanent in nature and that it

was not created specifically to accommodate plaintiff's physical impairments.  In addition, the

VE characterized the record keeper position as "one of those typical GM jobs," which would

suggest that there are several such positions at GM.  (Tr. 347)  In sum, the record does not reflect

that the record keeping job plaintiff held was a mere "make-work" job like the jobs addressed in

- 14 -

Kolman and Andrews, and plaintiff has pointed to nothing in the record indicating that the position was otherwise so insubstantial as to fail to meet the definition of "past relevant work."

Plaintiff also argues that the record keeping job does not constitute "past relevant work" because he was forced to take a medical retirement and thus could not return to the specific job he was performing. At the fourth stage of the disability determination process, the sole question is whether the claimant is physically and mentally capable of performing his past work. As long as the claimant performed the job within the 15 year time frame referred to in 20 C.F.R. § 404.1560(b)(1), the fact that his prior job may no longer be available to him, for whatever reason, is irrelevant. See Jozefowicz v. Heckler, 811 F.2d 1352, 1356 (10th Cir. 1987)("The argument that the claimant's former job is no longer available to her is irrelevant, so long as the claimant can still do the type of job she did in the past"); see also Presley v. Commissioner of Social Security, 23 Fed.Appx. (6th Cir. 2001)("Presley also suggests that [his past job as a pump watcher] should not be considered as past relevant work because the company which hired him no longer operates pumps in that area. However, even if a past job no longer exists, a claimant would not be considered disabled"); Pass v. Chater, 65 F.3d 1200, 1207 (4th Cir. 1995)("The question of whether past work continues to exist is...not relevant at step four of the disability inquiry under 20 C.F.R. § 416.920. Pass's allegation that his former position as a gate guard no longer exists does not draw into question the ALJ's finding that Pass was not disabled because the functional capacity to perform his past relevant work"). Plaintiff's argument that the record keeper job is not "past relevant work" because he could not return to it is plainly lacking in merit.

- 15 -

Plaintiff's final argument is that "there is no evidence [the record keeper] job was customarily performed some other way throughout the economy." This argument fails on two points. First, the claimant bears the burden of proof at step four of disability determination process. Boucher v. Apfel, 238 F.3d 419 (table), 2000 WL 1769520 (6th Cir.). Thus, the fact that there is no evidence on this point does not inure to plaintiff's benefit. Rather, the burden was on plaintiff to demonstrate that he performed the job in a different manner than it was customarily performed throughout the economy. Further, in any event, once it is determined that a claimant can perform his past work as he actually performed it, the ALJ need not consider whether the claimant is capable of performing the job as it is customarily performed in the national economy. This is made abundantly clear in SSR 82-61, which provides as follows:

> POLICY STATEMENT: Under sections 404.1520(e) and 416.920(e) of the regulations, a claimant will be found to be "not disabled" when it is determined that he or she retains the RFC to perform:
> 1. The actual functional demands and job duties of a particular past relevant job; or
> 2. The functional demands and job duties of the occupation as generally required by employers throughout the national economy.

See also, Pass, supra, 65 F.3d at 1207 ("Having found that Pass could perform his job as he did in the past, it is unnecessary to consult the DOT in order to determine whether Pass would be able to perform the position of gate guard as it currently exists in the national economy"). The two prongs of this test are plainly meant to be disjunctive – a finding of "not disabled" is warranted if either prong is met. Accordingly, once the ALJ determined that plaintiff was

- 16 -

capable of performing his past job as a record keeper, he was under no obligation to determine whether plaintiff could perform the job as it is generally performed throughout the economy.

### V.  Conclusion

For the reasons stated above, the court recommends that the Commissioner's motion for summary judgment be **GRANTED**, that plaintiff's motion for summary judgment be **DENIED**, and that plaintiff's complaint be **DISMISSED WITH PREJUDICE**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  Thomas v. Arn, 474 U.S. 140 (1985); Howard v. Secretary of HHS, 932 F.2d 505, 508 (6th Cir. 1991); United States v. Walters, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  Willis v. Secretary of HHS, 931 F.2d 390, 401 (6th Cir. 1991); Smith v. Detroit Fed'n of Teachers Local 231, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response.  The response shall be no more than 20 pages in length

- 17 -

unless, by motion and order, the page limit is extended by the court.  The response shall address

each issue contained within the objections specifically and in the same order raised.


                                               s/Virginia M. Morgan
                                              VIRGINIA M. MORGAN
Dated: November 21, 2005             UNITED STATES MAGISTRATE JUDGE

---

### PROOF OF SERVICE

The undersigned certifies that the foregoing Report and Recommendation was served upon counsel of record and the Social Security Administration via the Court's ECF System and/or U. S. Mail on November 21, 2005

                                    s/Jennifer Hernandez
                                    Case Manager to
                                    Magistrate Judge Virginia M. Morgan